IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

JOHN HENRY WILLIAMS,
ADC #93081                                                                                          PLAINTIFF

v.                                              2:05CV00040HLJ

MAX MOBLEY, et al.                                                                           DEFENDANTS

**MEMORANDUM AND ORDER**

I.  Introduction

This matter is before the Court on the defendant's motions for summary judgment (DE ##166, 176).  Plaintiff has filed responses in opposition to the motions (DE ##183, 184).

Plaintiff, a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983 against defendants, alleging deliberate indifference to his serious medical needs and denial of adequate medical care and treatment by defendants from March, 2003 until December, 2003, while he was incarcerated at the East Arkansas Regional Unit.  Specifically, plaintiff alleges that he suffered from hemorrhoids (rectal bleeding), migraine headaches, stomach problems and foot problems, and requested to see a Unit physician beginning in March, 2003.  Plaintiff states that he filed an emergency grievance about the situation in October, 2003, and was not seen by a physician until December 13, 2003.  Plaintiff asks for monetary relief from defendants, who include ADC officials Mobley, Harmon, Banks, Jackson, and James, together with several employees of Correctional Medical Services, Inc. (CMS), which contracts with the ADC to provide medical care and treatment to state prison inmates:  Yarbrough, Crawford, Montgomery, Spears, Jones, Driver, and Ousley (hereinafter referred to as the "medical defendants").

II.  Summary Judgment

A. ADC Defendants' Motion

In their motion for summary judgment, defendants state that plaintiff can not support his claim for deliberate indifference against them, and he can not establish a detrimental effect of any delay in his medical treatment. Plaintiff's allegations against each of the defendants, and defendants' arguments for dismissal, are as follows:

1) Defendant Jackson failed to honor plaintiff's request to see an infirmary doctor on October 20, 2003. Plaintiff complained of rectal bleeding and migraine headaches, and told Jackson he had been suffering from those symptoms for several months. Defendants note that defendant Jackson did sign an emergency grievance for the plaintiff, and that since plaintiff had been suffering from the symptoms for several months, it was reasonable for Jackson to believe that plaintiff's situation did not involve an emergency. Defendants state that plaintiff presents no evidence to support a finding of deliberate indifference against defendant Jackson.

2) Defendant Banks was deliberately indifferent to plaintiff's needs because he was informed of his medical situation through the grievance system. Defendants state that plaintiff admitted in his deposition that he did not actually speak with defendant Banks until 2004, after he was seen by the Unit physician. Defendants state that plaintiff fails to show any deliberate indifference on the part of Banks.

3) Defendant James, according to plaintiff's deposition, is supposed to make the warden aware of situations arising from the grievance process. Defendants state that this is a conclusory statement and does not show that defendant consciously disregarded a risk of harm to plaintiff.

4) Defendant Harmon was informed of plaintiff's medical situation. Plaintiff admitted in his deposition that Harmon referred plaintiff's grievances to the CMS Infirmary. Defendants state that defendant Harmon is not medically trained and was required to refer medical matters to CMS

employees.

5) Defendant Mobley did not ensure that plaintiff's problems were addressed. Defendants note that plaintiff admits in his complaint that defendant responded to his grievances and found, on December 31, 2003, that plaintiff's grievance did have merit. Defendants state that plaintiff doesn't allege any specific actions Mobley took or did not take which would support a finding of deliberate indifference.

Based on these allegations by plaintiff against the ADC defendants, the defendants state that plaintiff fails to support a claim against them for denial of medical care. Defendants note that officials who lack medical expertise can not be held liable for the diagnostic decisions of the medical staff, citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). Defendants further note that none of them are part of the medical staff and that they fulfilled their obligations by referring plaintiff's complaints to the proper medical personnel. Furthermore, defendants state that plaintiff does not support a finding that his medical situation constituted a serious medical need. Plaintiff's complaints included headaches, upset stomach, foot problems and hemorrhoids, none of which would cause a layperson to recognize the need for immediate medical attention. In addition, defendants note that although plaintiff was scheduled to see the Unit physician on December 7, 2003, he refused to see him. Defendants state that if plaintiff's condition was serious, he would not have refused to see the doctor on that date. Finally, defendants state that they are protected from liability by qualified immunity.

B. Plaintiff's Response

In his response, plaintiff states that his allegations against the ADC defendants are sufficient to support a claim for denial of medical care. Plaintiff states that he made numerous attempts to receive proper medical treatment for his conditions and that defendants, plaintiff's caretakers, were responsible for ensuring proper medical care and treatment. Plaintiff claims to have endured long periods of

suffering while waiting for defendants to take action, and that his complaints do amount to serious medical needs because he was removed from work programs and is confined to his cell.

C.  CMS Defendants' Motion

In support of their motion, defendants address plaintiff's allegations against each of them as follows:

1) Defendant Yarbrough, the Regional Administrator for CMS, whose office is located in Pine Bluff, Arkansas, communicated with plaintiff in 2004 with respect to his hemorrhoids.  Plaintiff stated in his deposition that he sued this defendant because she is a supervisor.  Defendants note that plaintiff's contact with this defendant did not occur until after the relevant time period in plaintiff's complaint.

2) Ms. Crawford, a licensed practical nurse at the Unit, saw plaintiff once in 2003 for a pre-lockup assessment.  Plaintiff complained to her about his hemorrhoids, and later admitted in his deposition that she gave him cream and pain pills and told him he was on the list to see a doctor.

3) Ms. Montgomery and Ms. Driver, medical clerks at the Unit, were told by plaintiff about his hemorrhoids.  Defendants note that these individuals were in charge of office assignments and maintenance of health records, and had no authority to treat patients.

4) Ms. Jones, also a medical records clerk, was approached by plaintiff in the hallway in 2003 about his hemorrhoid problems.  Plaintiff stated in his deposition that defendant tried to get him some help.

5) Mr. Spears, licenced practical nurse, talked to plaintiff about his rectal problems.  Plaintiff stated in his deposition that he saw Spears once in sick call, but this visit occurred in 2004, after the relevant time period.

6) Ms Ousley also communicated with plaintiff.  Plaintiff stated that he told her about his

medical problems and that she told him she would look into the matter. Defendants note that defendant Ousley did not work at the Unit until January, 2004, after the relevant time period.

Defendants further note that from March, 2003 until December, 2003, plaintiff submitted numerous sick call requests and was treated numerous times in the infirmary by non-party medical staff. Defendants provide copies of plaintiff's medical records which show that he was seen in the infirmary on the following dates, and was provided with various types of medication on each of these dates (DE #168, Ex. 2): 1) April 14, 2003 (blurred vision, sensitivity to light, gas/heartburn - referred to a physician and instructed to return to sick call, given Maalox);  2) May 29, 2003 (migraine headaches, gas, rash on foot - provided education about headaches, Maalox, and Tolnaftate cream); 3) July 26, 2003 (gas/heartburn, rash on foot - Maalox and education and Tolnaftate cream); 4) August 3, 2003 (gas/heartburn, headaches, rash on foot - Simetnicone, Acetaminophen, Tolnaftate cream); 5) August 7, 2003 (no complaints voiced); 6) September 21, 2003 (loss of weight and appetite, headaches, rash - Tylenol, Tolnaftate cream); 7) October 26, 2003 (rectal bleeding/headaches - referred to a physician).

Defendants also state that plaintiff's December 7, 2003 appointment with a physician was cancelled because plaintiff "didn't want to come to sick call", and that plaintiff was treated by the physician on December 13, 2003. At that time, plaintiff told the physician that his bleeding problem had improved.

Based on the medical records and the fact that the named defendants were not in a position to treat plaintiff during the relevant time period (for various reasons), the CMS defendants state that plaintiff fails to support a finding of deliberate indifference against them. Furthermore, defendants note that an inmate who complains that a delay in treatment rose to the level of a constitutional violation, must place verifying medical evidence in the record to support such a finding, citing Beyerbach v. Sears,

40 F. 3d 1324 (8th Cir. 1995). Defendants note that no such evidence is present in this situation. In addition, defendants note that plaintiff admitted in his deposition that in response to his complaints, each of the defendants instructed him to turn in sick call requests, and that any failure of any of these defendants to follow up on plaintiff's verbal complaints amounts to no more than negligence.

D.  Plaintiff's Response

In his response, plaintiff states that he complained to the defendants for nine months before he was able to see a Unit physician. Plaintiff states that defendants continued to tell him he would be referred to a doctor and was on a waiting list, but that he was not able to see a doctor until December, 2003. He complains that the only remedy provided to him for his rectal bleeding was hemorrhoid cream and pain pills and that he received nothing for his migraine headaches. Plaintiff states that he became frustrated with the sick call process and that he did not see a physician until after he filed a grievance. Plaintiff states he continues to suffer from rectal bleeding and other problems, and that the constant delays in receiving care supports his allegations of deliberate indifference. Finally, plaintiff states that as the medical care giver, CMS was responsible for the care and treatment of the inmates, and that liability is imputed to the CMS defendants by virtue of the Health Services Agreement between CMS and ADC. Plaintiff notes paragraph 3.3 of the agreement which states that no one should be required to wait more than 72 hours to be seen by a "qualified member of health care staff." Plaintiff complains that this was breached, since he was not seen by a physician for nine months, despite his constant requests.

E.  Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See

Dulaney v. Carnahan, 132 F.2d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

F  Analysis

In order to support a claim for an Eighth Amendment violation, plaintiff must prove that defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 827 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 197 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 901 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d

761, 765 (8th Cir. 1996 ). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach, supra, 49 F.3d at 1326. Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

In this particular case, although plaintiff alleges a delay in adequate treatment, plaintiff presents absolutely no evidence of any actions or behavior by the defendants which support his claim of deliberate indifference against them. In fact, the individual defendants sued by the plaintiff had limited involvement with him and his care, and even though they were not in a position of treatment, they either forwarded his complaints to the medical personnel, or instructed him about the proper medical protocol. Further, the medical records show that plaintiff was treated continuously (by non-party medical personnel) for his numerous ailments of headaches, hemorrhoids, stomach problems and foot problems, and received prescriptions of Tylenol, Maalox, Simetnicone, and Tolnaftate continuously. Plaintiff's disagreement with the continuous medical treatment provided to him is not sufficient to support a claim for deliberate indifference. See Smith v. Marcantonio, supra.. Finally, it is undisputed, and unexplained by plaintiff, that plaintiff himself cancelled an earlier visit with the doctor because he did not feel like going to sick call. Therefore, the Court concludes that defendant' motions for summary judgment should be granted, and plaintiff's complaint against defendants should be dismissed. Accordingly,

IT IS, THEREFORE, ORDERED that defendants' motions for summary judgment (DE #166, 176) are hereby GRANTED, and plaintiff's complaint against defendants is hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that all other pending motions are hereby DENIED as moot.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 25th day of January, 2007.

_____
United States Magistrate Judge